UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------

CAPLOC, LLC,

                         *Plaintiff*,

    -against-

RON MCCORD, CBB, INC. and
FIRST MORTGAGE COMPANY, LLC,

                         *Defendants.*

17 Civ. 5788 (AT)

--------------------------------------------------------------------------
FIRST MORTGAGE COMPANY, LLC,

                         *Third-Party Plaintiff*,

    -against-

ELI GLOBAL, LLC,

                         *Third-Party Defendant.*

--------------------------------------------------------------------------

      Third-Party Plaintiff First Mortgage Company, LLC ("FMC"), by its attorneys Wrobel Markham LLP, as and for its Third-Party Complaint against Third-Party Defendant Eli Global, LLC ("Eli Global") set forth as follows:

## **PARTIES**

      1.     FMC is a limited liability company, organized and existing under the laws of the State of Oklahoma, with a principal place of business in Oklahoma. Ron McCord, a citizen of Oklahoma, is FMC's sole member.

      2.     Upon information and belief, Eli Global is a Delaware limited liability company with a principal place of business in North Carolina. Upon information and belief, Greg Lindberg ("Lindberg") is the sole member of Eli Global.

3. Eli Global is a private equity firm that owns and controls CapLOC, LLC ("CapLOC"), FMC's warehouse lender. Upon information and belief, Lindberg is CapLOC's sole member.

4. Upon information and belief, Eli Global exercises complete control over CapLOC and CapLOC is so dominated by Eli Global that it is indistinguishable from Eli Global for jurisdictional purposes.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Eli Global is a citizen of North Carolina because its sole member Lindberg is a citizen of North Carolina. FMC is a citizen of Oklahoma because its sole member, Ron McCord, is a citizen of Oklahoma.

6. The Court has personal jurisdiction over Eli Global because, upon information and belief, Eli Global has sufficient minimum contacts with this District and regularly conducts business within this District such that exercising jurisdiction over Eli Global would not offend due process or traditional notions of fair play and substantial justice. Additionally, Eli Global at all times exercised complete control over CapLOC and so dominated CapLOC as to be indistinguishable from CapLOC in its business dealings with FMC. Because alter egos are treated as one entity for jurisdictional purposes and because CapLOC consented to the exclusive personal jurisdiction in this District under the Master Repurchase Agreement between CapLOC and FMC, (the "CapLOC MRA") and the Service Agreement among FMC, CapLOC and CBB, Inc. (the "Service Agreement"), which Eli Global caused CapLOC to execute and under which CapLOC commenced the action entitled *CapLOC, LLC v. First Mortgage Company, LLC et al.*, Case No. 1:17-cv-05788 pending in this District (the "CapLOC Action"), exercising jurisdiction

over Eli Global as a party, in fact, to the CapLOC MRA and Service Agreement in this instance would not be against due process or offend traditional notions of fair play and substantial justice.

7. Venue is proper in this District under 28 U.S.C. §1391 because alter egos are treated as one entity for jurisdictional purposes and because CapLOC and Eli Global, as a party in fact to the CapLOC MRA and Service Agreement, consented to venue in this District under the CapLOC MRA and Service Agreements, which Eli Global caused CapLOC to execute as part of its negotiations to purchase FMC. Furthermore, venue in this District is in the best interests of judicial economy and efficiency as this action arises out of the same facts and events as the CapLOC Action.

## **FACTS**

8. FMC is a mortgage lending company specializing in residential mortgage loans.

9. In May 2016, FMC hired a mortgage industry consultant to research and locate potential partners to provide a warehouse line of credit to fund FMC loans and capital necessary for FMC's technological and marketing needs.

10. FMC anticipated that its capital and funding needs would require two or more partners.

11. Eli Global approached FMC and offered it both the capital for the necessary technology and marketing upgrades and a warehouse line of credit through its affiliate CapLOC.

12. Upon information and belief, Eli Global formed CapLOC in or around March 2017 for the sole purpose of providing warehouse lending to mortgage lenders.

13. At that time, Eli Global was working aggressively to establish CapLOC as a warehouse lender in the industry.

14. FMC had no prior connection with, nor conducted business, directly or indirectly, with Eli Global or CapLOC.

15. FMC's only purpose for doing business with Eli Global was Eli Global's stated interest in purchasing FMC and its ability to provide FMC with a warehouse credit line through CapLOC.

**Eli Global Purchase Agreement with FMC**

16. On or about January 4, 2017, Eli Global executed a letter of intent ("LOI") to purchase all outstanding shares of capital stock, options, and convertible securities in FMC.

17. The LOI memorialized the parties' intent to enter into a purchase agreement and set forth the essential terms by which Eli Global agreed to purchase of FMC.

18. Under the terms of the LOI, Eli Global and FMC agreed that the "aggregate purchase price will be based on a valuation of $55,434,000 based on a book value close to $13,200,000" to be paid by Eli Global to FMC in the manner set forth therein.

19. Under Section 2, McCord, FMC's Chairman and CEO, was to enter into an employment agreement with Eli Global as CEO and with "a competitive salary, bonus and benefit packages."

20. Eli Global drafted an employment agreement under which McCord was to "oversee and manage the business and affairs of the Company" and would "be responsible for all duties customarily associated with such position" and would exercise "discretion and control over the employees of the Company, including, without limitation, hiring, firing and compensation except with respect to employees engaged in the mortgage servicing activities of the Company…."

21. Section 3 of the LOI required FMC to "terminate all existing warehouse facilities used by [it] to finance mortgage loans and enter into a warehouse facility agreement with a designated affiliate of [Eli Global] for the funding of all of [FMC's] mortgage loans…."

22. The LOI further required FMC "to negotiate…for the sale of [FMC] exclusively with [Eli Global] the earlier of March 31, 2017 or the closing of a transaction."

23. By letter, dated March 29, 2017, Eli Global executed an Extension of Exclusivity ("Extension Agreement"), whereby, in consideration for the parties continued negotiations, and for other good and valuable consideration, the parties agreed to continue exclusive negotiations for Eli Global's purchase of FMC until and through June 30, 2017.

24. Eli Global prepared a draft Membership Purchase Agreement memorializing the terms of the LOI, whereby McCord would sell all of his membership interests in FMC to an affiliate of Eli Global.

**CapLOC Warehouse Funding**

25. Concomitant with the execution of the LOI and Extension Agreement, Eli Global agreed to extend a warehouse line of credit to fund FMC loans through its affiliate, CapLOC.

26. In accordance with the LOI, Eli Global designated CapLOC as FMC's sole warehouse lender.

27. Upon information and belief, Eli Global provided the capital for CapLOC's warehouse lending operations and exercised complete control over CapLOC.

28. On or about March 30, 2017, FMC entered into the CapLOC MRA and Service Agreement with CapLOC pursuant to the terms of the LOI for a warehouse line of credit to fund FMC loans.

29. McCord executed a Guaranty in favor of CapLOC on the CapLOC MRA on that same date in accordance with the LOI.

30. Upon execution of the CapLOC MRA, CapLOC became FMC's sole source of funding.

31. FMC performed its obligations under the LOI and proceeded in good faith to contract with CapLOC as FMC's sole source of funding pursuant to the terms expressed in the LOI and Extension Agreement as negotiated and agreed by the parties, and relied on Eli Global's assurance that it would do the same.

**Eli Global Uses CapLOC's Warehouse Credit Line to Extort a Better Purchase Price from FMC**

32. Having secured CapLOC as FMC's sole source of funding, Eli Global used the CapLOC warehouse line as leverage in negotiating the final terms of the membership purchase agreement.

33. Indeed, Eli Global used the LOI, CapLOC MRA, Service Agreement, and other agreements as vehicles to position itself as FMC's lone source of funding through CapLOC and obtain FMC on the cheap.

34. In a brazen display of bad faith, and as negotiations were just coming to a close, Eli Global suddenly reneged on the terms set forth in the LOI and threatened FMC that CapLOC would pull its warehouse funding in 48 hours if FMC did not accept its new purchase terms.

35. The May 25, 2017 mark-up of Membership Interest Purchase Agreement by and among Eli Global, FMC and McCord reflects Eli Global's radically reduced offer to purchase FMC under Eli Global's new purchase terms.

36. Eli Global arbitrarily reduced the purchase price from $25,200,000 to $17,300,000 and all but eliminated any Earn Out Payments.

37. Moreover, in its revised draft employment agreement with McCord, Eli Global slashed McCord's compensation and reduced his title from CEO to "President – Retail Originations" with no real power.

38. Eli Global's new purchase terms were the equivalent of an FMC takeover and McCord's ouster.

**Eli Global Terminates Negotiations and CapLOC Withdraws Warehouse Funding**

39. When FMC rejected Eli Global's new purchase terms, Eli Global immediately terminated negotiations for the purchase of FMC and caused CapLOC to withdraw FMC's warehouse credit line.

40. Upon information and belief, Eli Global and CapLOC thereafter fabricated and/or manufactured alleged events of default to justify their bad faith actions in breaching the LOI and terminating FMC's warehouse funding as retribution for refusing to accept Eli Global's radically reduced purchase price.

41. Upon information and belief, from the beginning the goal of Eli Global was to force McCord to sell his ownership interest in FMC for pennies on the dollar. The warehouse line was just a mechanism to wrestle FMC away from McCord. This is borne out by the fact that in June, after CapLOC had terminated the warehouse line, CapLOC approached McCord and offered to reinstate the line if he signed a pledge agreement essentially turning over his 100% interest in FMC. McCord refused. Then, in July, CapLOC again offered to reinstate the line if McCord granted CapLOC a right of first refusal on his FMC membership interests. Again, McCord refused.

42. Upon information and belief, Eli Global misused its access to FMC, in violation of the Mutual Non-Disclosure Agreement executed by and between Eli Global and FMC, dated September 2, 2016, ("NDA") to ferret out any and all FMC accounting errors and/or mistakes to manufacture events of default in furtherance of their plan to force FMC to agree to Eli Global's new purchase terms and accede to its takeover of the company.

**FMC Performed Its Obligations under the LOI and the CapLOC MRA**

43. At all times, FMC performed its obligations under the LOI and negotiated in good faith for Eli Global's purchase of FMC.

7

44. At all times, FMC executed its duties in accordance with the CapLOC MRA and the Service Agreement, adhering to all government and regulatory guidelines until CapLOC abruptly pulled its warehouse funding after FMC refused to accept Eli Global's eleventh hour attempt to take over FMC and oust McCord.

45. FMC at all times maintained proper servicing of all CapLOC funded loans and continues to maintain proper servicing and use all commercially reasonable efforts to market and sell all remaining CapLOC funded loans held in inventory on the CapLOC line of credit, despite Eli Global's malefic actions.

46. When FMC and McCord refused to give in to Eli Global's unreasonable and underhanded demands, Eli Global and CapLOC made good on their threat to pull FMC's warehouse credit line and ceased all warehouse funding to FMC.

47. Having secured CapLOC as FMC's sole source of warehouse funding in the LOI, Eli Global attempted to extort a better purchase price that amounted to a takeover of FMC and ouster of McCord.

48. By withdrawing FMC's warehouse funding, Eli Global and CapLOC knowingly created and intended to create cash flow problems for FMC in an effort to ruin the company financially.

49. Indeed, when McCord rejected Eli Global's takeover, Lindberg, Eli Global's Chairman and CEO, screamed at McCord "I will ruin you and FMC!" and "I will own your furniture!"

**Eli Global Kills FMC's Sale to Academy**

50. On or about July 12, 2017, FMC and Academy Mortgage Corporation ("Academy") entered into an Asset Purchase Agreement ("APA").

51. As part of the APA, and in anticipation of the closing, Academy made offers of employment to FMC's employees

52. Upon information and belief, on July 31, 2017 Eli Global caused CapLOC to commence the CapLOC Action and file a Motion for Order of Attachment against FMC seeking, *inter alia*, attachment of any payment to FMC by Academy under the APA with the intent of killing that deal and in furtherance of Lindberg's threat to ruin McCord and FMC.

53. That very same day, Academy terminated the APA specifically citing CapLOC's action against FMC.

54. In an effort to protect its employees and their livelihoods, FMC honored Academy's employment offers and consented to Academy hiring those FMC employees. FMC waived any non-solicit or non-hire claims it might have with respect to those employees, effectively giving over its loan officers to Academy for free.

55. FMC lost the Academy APA and its loan officers as a result of Eli Global's and CapLOC's actions.

56. FMC has not benefitted financially from any remaining CapLOC funded loan held in inventory.

57. FMC's ability to conduct its business in the normal course and sell the remaining CapLOC funded loans off CapLOC's credit line has been impeded by Eli Global's and CapLOC's bad faith actions as set forth herein.

58. Despite Eli Global's and CapLOC's underhanded and fraudulent business tactics, FMC at all times negotiated with Eli Global and conducted business with CapLOC in good faith.

### FIRST CAUSE OF ACTION
**(Fraud and Fraudulent Inducement)**

59. FMC incorporates by reference the allegations set forth in paragraphs 1 through 58 above as if set forth at length herein.

60. Eli Global entered into the LOI and represented to FMC and Mr. McCord that it would negotiate the purchase of FMC in good faith pursuant to the terms set forth therein.

61. Upon information and belief, Eli Global entered into the LOI with FMC with the intent to gain access to FMC's financials and secure its affiliate, CapLOC, as FMC's sole source of warehouse funding.

62. Under the LOI, Eli Global required FMC to "terminate all existing warehouse facilities used by [it] to finance mortgage loans and enter into a warehouse facility agreement with a designated affiliate of [Eli Global] for the funding of all of [FMC's] mortgage loans…."

63. Eli Global designated CapLOC as FMC's sole warehouse lender.

64. On March 30, 2017, FMC entered into the CapLOC MRA and Service Agreement.

65. Upon information and belief, Eli Global provided the capital for CapLOC's warehouse lending operations.

66. FMC justifiably relied upon Eli Global's representations and assurances that it would negotiate the purchase of FMC in good faith pursuant to the terms set forth in the LOI.

67. FMC complied with the terms of the LOI and entered into the CapLOC MRA.

68. Upon execution of the CapLOC MRA, CapLOC became FMC's sole source of funding

69. Eli Global used the LOI and the CapLOC MRA and Service Agreement to position itself and CapLOC as FMC's sole source of capital and warehouse funding.

70. Having secured CapLOC as FMC's sole source of funding, Eli Global used the CapLOC warehouse line as leverage in negotiating the final terms of the membership purchase agreement to extort a better purchase price that amounted to a takeover of FMC and ouster of McCord.

71. When FMC refused to succumb to Eli Global's bad faith actions, Eli Global used its position in furtherance of its promise to financially ruin FMC and Mr. McCord and pulled FMC's warehouse loan as retribution.

72. By withdrawing FMC's warehouse loan, Eli Global and CapLOC knowingly created and intended to create cash flow problems for FMC in an effort to ruin the company financially.

73. Indeed, when McCord rejected Eli Global's takeover, Greg Lindberg, Eli Global's Chairman and CEO, screamed at McCord "I will ruin you and FMC!" and "I will own your furniture!"

74. As a result of Eli Global's fraudulent actions, FMC has suffered actual and consequential damages in an amount to be proven at trial but in excess of $40,000,000.

## SECOND CAUSE OF ACTION
### (Tortious Interference with Business Relationships)

75. FMC incorporates by reference the allegations set forth in paragraphs 1 through 74 above as if set forth at length herein.

76. On or about July 12, 2017, FMC and Academy entered into the APA.

77. Upon information and belief, Eli Global and CapLOC knew about the pending Academy APA through Eli Global's negotiations with FMC and due diligence efforts in accordance with the LOI.

78. Eli Global and CapLOC intentionally interfered with the Academy APA by commencing the CapLOC Action and by CapLOC's frivolous motion for an Order of Attachment which motion it voluntarily withdrew on August 28, 2017 without a hearing. Indeed, after denying CapLOC's subsequent motion for a Temporary Restraining Order, the Court requested that its time in the future not be "wasted" with "meritless motions."

79. Eli Global and CapLOC intentionally interfered with the Academy APA as retribution for and in furtherance of their plan to ruin FMC and McCord financially following their refusal to succumb to Eli Global in the purchase agreement negotiations.

80. As a result of Eli Global's and CapLOC's actions, Academy terminated the APA with FMC, specifically citing CapLOC's litigation, by letter, dated July 31, 2017.

81. As a result of Eli Global's and CapLOC's tortious interference with FMC's business relationship with Academy, as set forth herein, FMC has suffered actual and consequential damages in an amount to be proven at trial but in excess of $40,000,000.

## THIRD CAUSE OF ACTION
### (Breach of the Duty of Good Faith and Fair Dealing)

82. FMC incorporates by reference the allegations set forth in paragraphs 1 through 81 above as if set forth at length herein.

83. On or about January 4, 2017, Eli Global executed the LOI to purchase all outstanding shares of capital stock, options, and convertible securities in FMC.

84. The LOI memorialized the parties' intent to enter into a purchase agreement and set forth the terms by which Eli Global would purchase of FMC.

85. In furtherance of its negotiations, Eli Global and FMC also entered into NDA

86. FMC performed its obligations under the LOI and proceeded in good faith to contract with CapLOC under the CapLOC MRA and Service Agreement as FMC's sole source of funding pursuant to the terms expressed in the LOI and Extension Agreement as negotiated and agreed by the parties, and relied on Eli Global's assurance that it would do the same.

87. On or about March 30, 2017, FMC entered into the CapLOC MRA and Service Agreement for a warehouse line of credit to fund FMC loans.

88. Through the LOI and the contemporaneous negotiations between Eli Global and FMC for Eli Global's purchase of FMC, Eli Global thus positioned itself, through its designated affiliate, CapLOC, as FMC's sole source of mortgage funding.

89. Having secured CapLOC as FMC's sole source of warehouse funding, Eli Global used the CapLOC warehouse loan as leverage in its negotiation of the final terms of the FMC membership purchase agreement.

90. Specifically, as set forth above, Eli Global suddenly reneged on the purchase terms set forth in the LOI and the parties' good faith negotiations and informed FMC that CapLOC would pull its warehouse funding in 48 hours if FMC did not accept its new purchase terms, which amounted to a takeover of FMC and an ouster of McCord.

91. Eli Global's reduced purchase price included a reduction from $25,200,000 to $17,300,000 and elimination of any Earn Out Payments.

92. Eli Global's revised draft employment agreement slashed McCord's compensation and reduced his title from CEO to "President – Retail Originations" with no real power.

93. When FMC and McCord refused Eli Global's new purchase terms, Eli Global caused CapLOC to pull its warehouse credit line as retribution and in an attempt to financially ruin McCord and FMC in furtherance of Eli Global's threat.

94. By causing CapLOC to withdraw FMC's warehouse funding, Eli Global knowingly created and intended to create cash flow problems for FMC in an effort to ruin the company and Mr. McCord financially.

95. Eli Global used the LOI, CapLOC MRA, Service Agreement, NDA, and McCord's draft employment agreement in furtherance of a plan to obtain FMC on the cheap by positioning itself as FMC's lone source of funding and then using the above agreements as

vehicles to obtain FMC at low cost, essentially taking over the company while ousting Mr. McCord.

96. Eli Global's actions and its failure to negotiate in good faith constitute a breach of the duty of good faith and fair dealing inherent in each of these agreements.

97. As a result of Eli Global's breach of its duty of good faith and fair dealing as set forth herein, FMC has suffered actual and consequential damages in an amount to be proven at trial but in excess of $40,000,000.

## JURY DEMAND

98. FMC hereby demands a trial by jury on all triable issues.

WHEREFORE, Third-Party Plaintiff First Mortgage Company demands judgment as follows:

(a) On the First Cause of Action in the Third-Party Complaint, damages in an amount to be proven at trial but in excess of $40,000,000;

(b) On the Second Cause of Action in the Third-Party Complaint, damages in an amount to be proven at trial but in excess of $40,000,000;

(c) On the Third Cause of Action in the Third-Party Complaint, damages in an amount to be proven at trial but in excess of $40,000,000;

(d) Granting such other and further relief as the Court may deem just and proper, including the costs, disbursements, and attorneys' fees of this action.

Dated: New York, New York
October 25, 2017

Respectfully submitted,

WROBEL MARKHAM LLP

By: /s/ Daniel F. Markham
Daniel F. Markham
360 Lexington Avenue, Suite 1502
New York, NY 10017
Tel: (212) 421-8100
*Attorneys for Third-Party Plaintiff First Mortgage Company*

To:  Lon J. Seidman
Diamond McCarthy LLP
489 Fifth Avenue, 21st Floor
New York, NY 10017
Tel: (212) 430-5400

Aaron Z. Tobin
Jared T.S. Pace
Condon Tobin Sladek Thornton PLLC
8080 Park Lane, Suite 700
Dallas, TX 75231
Tel: (214) 265-3800
*Attorneys for Eli Global, LLC*