UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/3/2020____

CAPLOC, LLC,

                          Plaintiff,

          -against-

RON McCORD, and FIRST MORTGAGE COMPANY, LLC,

                          Defendants.

FIRST MORTGAGE COMPANY, LLC,

                          Third-Party Plaintiff,

          -against-

ELI GLOBAL, LLC,

                          Third-Party Defendant.

17 Civ. 5788 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, CapLOC, LLC ("CapLOC"), brings this action alleging that Defendants, Ron McCord and First Mortgage Company, LLC ("FMC"), breached their agreements and committed fraud when FMC and McCord transferred millions of dollars in unauthorized mortgage loans to CapLOC and caused CapLOC to fund these unwanted loans. Compl. at 1–2, ECF No. 41. FMC subsequently filed a separate action against Third-Party Defendant, Eli Global, LLC ("Eli Global"), a private equity firm that allegedly owns CapLOC. *See* No. 17 Civ. 7335. The Court consolidated the separate action with this case. ECF No. 64.

Now before the Court are CapLOC's motion for summary judgment, ECF No. 227, Eli Global's motion for summary judgment, ECF No. 230, and FMC and McCord's motion for partial summary judgment, ECF No. 233. For the reasons stated below, each of these motions is GRANTED in part and DENIED in part.

I.   Procedural History

On July 31, 2017, CapLOC commenced this action by filing a complaint against FMC, McCord, American Southwest Mortgage Corp. ("ASMC"), American Southwest Mortgage Funding Corp. ("ASMFC"), Citizens State Bank ("Citizens"), SpiritBank ("Spirit"), and CBB, Inc. ("CBB"). ECF No. 1. CapLOC moved by order to show cause for a prejudgment attachment against FMC. ECF No. 17. On August 22, 2017, CapLOC moved for a temporary restraining order and a preliminary injunction against FMC. ECF No. 36. The Court denied CapLOC's applications for a prejudgment attachment and preliminary relief. ECF No. 44. On August 28, 2017, CapLOC sought, and the Court granted, voluntary dismissal of all claims against ASMC, ASMFC, Citizens, and Spirit. ECF Nos. 40, 42. That same day, CapLOC filed an amended complaint against FMC, McCord, and CBB. Compl., ECF No. 41. CapLOC voluntarily dismissed all claims asserted against CBB on October 4, 2017. ECF No. 62.[2]

On September 21, 2017, McCord and FMC filed counterclaims against CapLOC, alleging breach of contract, breach of the duty of good faith and fair dealing, and tortious interference.

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the complaint, the parties' Rule 56.1 statements of undisputed fact, the responses thereto, and the parties' declarations. Facts in dispute are so noted. Citations to a paragraph in a party's Rule 56.1 statement also include the opposing party's response. █████████

████████████████████████████████████████████████████████

██████████████████ Moreover, the Court considers statements of fact undisputed, for the purposes of this motion, where the party's response does not specifically controvert certain assertions within the Rule 56.1 statement of fact. *Perry v. City of New York*, No. 13 Civ. 1015, 2018 WL 1474401, at *2 (S.D.N.Y. Mar. 26, 2018) ("In the event that a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may, among other things, consider the fact undisputed for purposes of the motion." (internal quotation marks, citation, and alteration omitted)).

[2] On September 20, 2017, CapLOC filed suit in Texas state court against ASMC, ASMFC, Citizens, and Spirit; that suit was removed to the United States District Court for the Northern District of Texas. *See CapLOC, LLC v. American Southwest Mortgage Corp., et al.*, No. 17 Civ. 2904 (N.D. Tex. 2017). In August 2019, the case was transferred to the Western District of Oklahoma, where it remains pending. *See CapLOC, LLC v. American Southwest Mortgage Corp. et al*, No. 19 Civ. 715 (W.D. Okla. 2019).

Counterclaims, ECF No. 59 ¶¶ 204–235. On October 25, 2017, FMC filed a third-party complaint against Eli Global, alleging fraud, tortious interference, and breach of the duty of good faith and fair dealing. ECF No. 73 ¶¶ 59–97. CapLOC moved to dismiss McCord and FMC's counterclaims, ECF No. 77, and Eli Global moved to dismiss FMC's third-party complaint, ECF No. 103.

On June 12, 2018, the Court granted CapLOC's motion to dismiss FMC's counterclaims, and dismissed all of FMC's causes of action against Eli Global except for its claim of breach of the duty of good faith and fair dealing. June 12, 2018 Opinion at 24, ECF No. 137.

II.     Facts

The facts discussed in this opinion are undisputed except where otherwise noted. The Court has drawn all reasonable inferences in favor of the nonmovant. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

CapLOC, a North Carolina-based warehouse lender,[3] provided loan funding to FMC, an Oklahoma-based mortgage lender, which is owned and operated by McCord. CapLOC 56.1 ¶ 1, ECF No. 220-1; FMC 56.1 ¶¶ 1–3.[4]

Non-parties, ASMC and ASMFC, are FMC's former warehouse lenders, and provided FMC funding through their parent companies, Spirit and Citizens, respectively. CapLOC 56.1 ¶ 2. Non-party CBB conducted the operations of ASMC and ASMFC on behalf of Citizens and Spirit. FMC 56.1 ¶ 11.[5]

---

[3] Warehouse lending is "a means for a bank or [a] similar institution to provide funds to a borrower without using its own capital." *Warehouse Lending*, Investopedia, https://www.investopedia.com/terms/w/warehouse_lending.asp (last visited February 24, 2020). In warehouse lending, an entity (here, FMC) handles the applications and approval of mortgage loans but obtains funds from a warehouse lender (here, CapLOC). The loan stays on the warehouse line until it is sold on the secondary market, either directly or through securitization. *See id.* Once sold, the loan is repurchased from the warehouse lender. Hence the name of FMC and CapLOC's agreement: "Master *Repurchase* Agreement" (emphasis added).

[4] FMC's 56.1 statement was filed under seal and does not have an assigned ECF number.

[5] ASMC, ASMFC, Spirit, Citizens, and CBB are Oklahoma-based corporations. FMC 56.1 ¶¶ 4–7, 11.

CapLOC alleges that FMC entered into warehouse lending agreements with ASMC and ASMFC on August 3, 2000 and September 5, 2013, respectively. Compl. ¶¶ 12–16; *see also* CapLOC 56.1 ¶ 6 (ASMC functioned as FMC's former warehouse lender). Pursuant to those lending agreements, CBB allegedly acted as the manager and custodian agent for ASMC and ASMF, and that CBB received a fee for every loan each company funded. Compl. ¶ 20. Richard Carrington, CBB's owner, was also an officer and board member of both ASMC and ASMFC, as well as a decades-long friend of McCord. CapLOC 56.1 ¶ 4.

FMC's head of accounting testified that FMC experienced financial difficulties in the fall of 2016 and was undertaking "cash management triage." CapLOC 56.1 ¶ 10; Melinda Bisarek Dep. 71:14–74:10, Markham Decl. Ex. 18, ECF No. 221-3.[6] CapLOC asserts, and FMC disputes, that FMC began taking payments it received from borrowers and using the money to cover operational expenses rather than remitting the payments to ASMC or ASMFC. CapLOC 56.1 ¶ 11; Richard Carrington Dep. 85:6–88:2, 100:4–106:19, Markham Decl. Ex. 6, ECF No. 221-3; Bisarek Dep. 73:1–75:19, 76:20–79:25.[7]

By the end of 2016 or early 2017, ASMC internally classified various FMC loans, collectively worth millions of dollars, as "out of trust."[8] CapLOC 56.1 ¶¶ 12–13. In addition to

---

[6] Exhibit 18 was filed under seal.
[7] Specifically, in late 2016, ASMC learned that FMC was using money, which should have been remitted to the warehouse lender, to pay for FMC's expenses, and that FMC was receiving payments on principal and interest on the advanced loans that had either already been sold, been paid off, or retired. Carrington Dep. 102:3–15, 104:15–18. ASMC determined that construction loans and substantial rehabilitation loans, which should have had escrow accounts included in the transaction, did not have such accounts. *Id.* 102:19–23. ASMC also discovered an instance where FMC instructed a title company to deliver a payment to FMC, and not to ASMC, on a closing that satisfied a mortgage. *Id.* 102:19–103:7. Moreover, ASMC learned that the advance on an interim loan from ASMC's warehouse line was never paid off because FMC had instructed the title company to forward the sale proceeds from the transaction to FMC, rather than to the warehouse lenders. CapLOC 56.1 ¶ 12; Carrington Dep. 103:15–104:10.
[8] "An out-of-trust [loan] means that whoever put it on the warehouse line, the originator, received payment for it, but they didn't pay it off the line." Laura Owings Dep. 89:17–19, Markham Decl. Ex 16, ECF No. 221-3. Here, FMC, the loan originator, is alleged to have received money on loans funded by the warehouse lender (*i.e.*, ASMC, ASMFC, or CapLOC). And rather than hold the payment "in trust" for the warehouse lender, FMC is alleged to have kept the money for itself.

the out-of-trust loans, ASMC and ASMFC identified certain undesirable or less valuable loans on Spirit's mortgage warehouse line with ASMC. *Id.* ¶ 14. At the end of 2016, ASMC made resolution of the out-of-trust loans a priority. *Id.* ¶ 15. ASMC gave notice that it would cease funding FMC loans by the end of March 2017. *Id.* ¶ 16.

Meanwhile, as of late 2016 or early 2017, FMC, McCord, and Eli Global began negotiating a deal in which Eli Global would acquire FMC. Compl. ¶ 29; Third-Party Compl. ¶¶ 28–33, 39, ECF No. 99. On January 4, 2017, Eli Global and McCord signed a letter of intent regarding Eli Global's potential acquisition of FMC. CapLOC 56.1 ¶ 18. Specifically, the letter of intent set forth aggregate purchase price for FMC, based on a valuation of $55,434,000, as well as the plan for FMC to terminate its existing relationships with warehouse facilities, and instead form an exclusive warehouse lending agreement with an affiliate designated by Eli Global. Letter of Intent ¶¶ 1–3, ECF No. 59-3. McCord would also be hired by Eli Global in this contemplated deal. *Id.* ¶ 2.

Eli Global agreed to fund, through the designated affiliate, FMC loans with a warehouse line of credit. Compl. ¶ 39; Third-Party Compl. ¶ 48. CapLOC, the designated affiliate, was formed on March 14, 2017. CapLOC 56.1 ¶ 25.[9] CapLOC asserts that, at that time, it was unaware of that some of FMC's loans with its prior warehouse lenders were out of trust. *Id.* ¶ 22.

On March 30, 2017, CapLOC and FMC signed a Master Repurchase Agreement ("MRA"), which finalized the warehouse facility agreement—that is, the terms by which CapLOC would fund FMC loans. CapLOC 56.1 ¶ 27; MRA, ECF No. 99-1; Third-Party Compl. ¶¶ 41, 43; Compl. ¶¶ 42–43. CapLOC alleges that FMC's warehouse lending agreements with

---

[9] CapLOC is a subsidiary of CapLOC Holdings, owned by Greg Lindberg, who is also "in charge of" Eli Global. Owings Dep. 24:17–21.

ASMC and ASMFC ended as of March 30, 2017, the day FMC and CapLOC entered into the MRA. Compl. ¶ 49. The MRA identifies CBB as the loan custodian, FMC Counter 56.1 ¶ 24, ECF No. 224-1, which CapLOC alleges is analogous to the position CBB held in the agreements between FMC and ASMC and ASMFC, Compl. ¶ 50.

On the same day the MRA was executed, CapLOC, CBB, and FMC entered into a Service Agreement. Service Agreement, ECF No. 19-5. Pursuant to the agreement, CapLOC agreed to use CBB and Carrington as warehouse lending agents while CapLOC built its operations. CapLOC 56.1 ¶ 32; FMC Counter 56.1 ¶ 25; Compl. ¶ 35.

Also that same day, McCord signed a guaranty with CapLOC, in which he "agree[d] to guarantee [FMC]'s obligations under the [MRA]." McCord Guaranty at 1, ECF No. 99-5.

Within 30 days of the parties' execution of the MRA, CBB sent funding requests to CapLOC amounting to approximately $34 million, payable to Spirit and Citizens, which CapLOC fulfilled by authorizing wire transfers. CapLOC 56.1 ¶ 38; FMC Counter 56.1 ¶ 31. CapLOC claims that this payment of $34 million went toward loans that turned out to be undesirable and out-of-trust. CapLOC 56.1 ¶ 38.[10] These loans (the "Disputed Loans") are at the heart of the parties' dispute in this litigation. About half of the $34 million went toward the purchase of out-of-trust loans (the "Out-of-Trust Loans"). FMC Counter 56.1 ¶ 32. Either ASMC or ASMFC was the previous owner of the Out-of-Trust Loans, FMC Counter 56.1 ¶ 28, and the Disputed Loans were originated by FMC during its warehouse lending agreements with ASMC and ASMFC. CapLOC 56.1 ¶ 44. Thus, in fulfilling various funding requests sent by CBB, CapLOC purchased, from either ASMC or ASMFC, $34 million worth of Disputed Loans, $17 million of which were Out-of-Trust Loans.

_____

[10] FMC does not dispute the characterization of these loans as undesirable or out-of-trust. *See* CapLOC 56.1 ¶ 38.

Shortly after its purchase of the Disputed Loans, CapLOC sought additional information from FMC regarding the Disputed Loans.  CapLOC 56.1 ¶ 40.[11]

The MRA defines an "Eligible Mortgage Loan" as a mortgage loan that "(a) is an Approved Mortgage Product, (b) complies with the representations and warranties set forth [i]n Schedule 1 hereto, (c) is not a Defective Mortgage Loan, and (d) is not a Delinquent Mortgage Loan."  MRA § 2 (emphasis omitted).  The MRA also requires FMC to notify CapLOC "[a]s soon as reasonably possible," if "any Purchased Mortgage Loan has become a Defective Mortgage Loan."  *Id.* § 12(c)(ii)(F); *see also id.* § 2 (defining "Defective Mortgage Loan); *id.* § 13(n) (stating that an "Event of Default" occurs when a loan becomes "[d]efective" and is not repurchased within one business day).

On June 6, 2017, CapLOC ceased all funding for FMC loans.  CapLOC 56.1 ¶ 49.  On June 21, 2017, CapLOC issued a Notice of Default to FMC.  FMC Counter 56.1 ¶ 30.

On July 21, 2017, CapLOC accelerated the balance that it claimed FMC owed.  CapLOC 56.1 ¶ 48.  CapLOC asserts that, between March 30, 2017 and June 6, 2017, CapLOC funded 2,513 loans, totaling more than $468 million.  CapLOC 56.1 ¶ 37.[12]

Meanwhile, negotiations between Eli Global and FMC stretched into summer 2017, but were ultimately unsuccessful, and Eli Global did not purchase FMC.  Counterclaims ¶¶ 165–170.  FMC alleges that, in July 2017, after its sale to Eli Global fell through, FMC entered into negotiations with Academy Mortgage Company ("Academy") for Academy's potential purchase of FMC.  *Id.* ¶¶ 196; Third-Party Compl. ¶ 76.  The day CapLOC filed this lawsuit, however,

---

[11] This statement of fact is cited only for the proposition that a CapLOC employee contacted McCord on May 2, 2017 for information regarding these loans.

[12] FMC and McCord state that they "are not in a position to admit or deny" this statement of fact.  However, because FMC and McCord failed to follow Rule 56(d), which sets out the requirements for parties to show that facts are unavailable to them, the Court considers this fact undisputed for the purposes of this motion. Fed. R. Civ. P. 56(e)(2).

Academy cancelled the deal, citing risks from the CapLOC litigation. Counterclaims ¶¶ 196–98; Third-Party Compl. ¶ 79.

**DISCUSSION**

## I. <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.

In order to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party "must present concrete particulars and cannot succeed with purely conclusory allegations." *Marathon*

8

*Enterprises, Inc. v. Schroter GMBH & Co. KG*, No. 01 Civ. 595, 2003 WL 355238, at *4 (S.D.N.Y. Feb. 18, 2003) (internal quotation marks and citation omitted). "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Id.* "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). In deciding the motion, the Court views the record in the light most favorable to the nonmoving party. *Koch*, 287 F.3d at 165.

II.    <u>Analysis</u>

 A.  CapLOC's Motion for Summary Judgment

  1.  Breach of Contract

New York law governs this action. *See* MRA § 27. "The elements of a breach of contract claim in New York are (1) the existence of a contract, (2) plaintiff's performance, (3) breach by the defendant, and (4) damages." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 403–04 (S.D.N.Y. 2004). In a breach of contract action, summary judgment is appropriate if "the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." *Farago Adver., Inc. v. Hollinger Int'l, Inc.*, 157 F. Supp. 2d 252, 258 (S.D.N.Y. 2001).

"Under New York law, . . . the initial interpretation of a contract is a matter of law for the court to decide." *Yafa Jewelry Inc. v. All Those Underwriters Subscribing to Policy of Ins. Numbered 96FA0026180A*, 42 F. Supp. 2d 307, 310 (S.D.N.Y. 1999) (quoting *K. Bell & Assoc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)) (internal quotation marks omitted). "A contract, however, is not ambiguous merely because the parties urge different interpretations in the litigation." *Id.* at 311 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (internal quotation marks omitted). "The court is not required to find the

language ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Id.* (internal quotation marks, citation, and alterations omitted).

In moving for summary judgment, CapLOC advances ten grounds for its breach of contract cause of action, *see* Compl. ¶ 81, and FMC cross-moves and seeks dismissal of CapLOC's breach of contract claims as applied to the $17 million Out-of-Trust Loans, *see* FMC Mem. at 12, ECF No. 234.[13]  The Court addresses each basis of the breach of contract claim in turn.

a.   Transfer of the Disputed Loans

CapLOC first moves for summary judgment on its claim that FMC breached the MRA by transferring the Disputed Loans to CapLOC's warehouse line.  CapLOC Mem. at 4–10, ECF No. 228.  FMC cross moves for summary judgment and argues that the breach of contract claim, as it relates to the Out-of-Trust Loans, should be dismissed.  FMC Mem. at 8–12.

CapLOC argues that FMC breached the MRA because CapLOC ended up funding the Disputed Loans, which CapLOC discovered were originated prior to the date of the MRA and were not "Eligible Mortgage Loans" as defined by the MRA, because, CapLOC claims, the Disputed Loans were worthless and out-of-trust.  CapLOC Mem. 4–5.  FMC responds, however, that CapLOC's funding of the Disputed Loans were transactions that occurred outside of the MRA, given that CapLOC received these loans from ASMC or ASMFC, not FMC, and CapLOC received funding requests for these loans from CBB, not FMC.  FMC Opp. at 7–10, ECF No. 221.

The Court concludes that the written agreements among the parties are unambiguous.

---

[13] For brevity, each reference to FMC includes both FMC and McCord, except where otherwise noted.

First, the only reasonable interpretation of the MRA is that it covers only loans transferred from

FMC to CapLOC, which does not include the Disputed Loans.

Section 1 of the MRA states:

From time to time the parties hereto may enter into transactions in which [FMC] agrees to transfer to [CapLOC] Eligible Mortgage Loans on a servicing released basis against the funds by [CapLOC] . . . .  Each such transaction shall be referred to herein as a "Transaction" and shall be governed by this Agreement (including any supplemental terms or conditions contained in any annexes identified herein, as applicable hereunder), unless otherwise agreed in writing.

MRA § 1.

Section 2 defines "Purchased Mortgage Loan," as "each Mortgage Loan sold by [FMC]

to [CapLOC] in a *Transaction . . . .*"  MRA § 2 (emphasis added).  It follows, then, that all

Purchase Mortgage Loans must be transferred in Transactions, which, as defined in § 1, are

transfers of loans from FMC to CapLOC.

FMC did not transfer the Disputed Loans to CapLOC.  Instead, AMSC or ASMFC

transferred the Disputed Loans to CapLOC, at the request of CBB.  *See* Troy Andersen

7/31/2017 Decl. ¶¶ 44–45, Markham Decl. Ex. 14, ECF No. 221-3 ("CBB requested funding for

loans that were not eligible for funding under the [Agreement]."); *see also* Carrington Dep.

118:2–12 (testifying that CBB employees decided which ASMC or ASMFC loans to transfer to

CapLOC).  In fulfilling CBB's funding requests, CapLOC authorized wire transfers of

approximately $34 million, payable to Spirit and Citizens; as a result of this payment, AMFSC or

AMSC transferred the Disputed Loans from their warehouse line to CapLOC's.  FMC Counter

56.1 ¶ 31.[14]  Therefore, the Disputed Loans are not "Purchased Mortgage Loans" under the

MRA.

---

[14] As the Court discusses in greater length in the section addressing fraud and fraudulent concealment, however, CBB appears to have initiated the transfers of loans from ASMC and ASMFC to CapLOC at the behest of FMC.

Additionally, the MRA unambiguously covers only newly-originated loans—that is, loans originated after the parties' execution of the MRA. Schedule 2 of the Pricing Letter states that CapLOC may purchase "existing" mortgage loans from FMC's prior warehouse lenders "*if* [CapLOC] determines to make such purchase in its sole and absolute discretion." Pricing Letter at Sch. 2-1, ECF No. 24-5 (emphasis added).[15] Other than acknowledging that CapLOC may purchase such existing mortgage loans, however, the Pricing Letter and the MRA do not contain provisions governing such loans.

The Service Agreement further supports the conclusion that the Disputed Loans fell outside of the parties' written agreements. The Service Agreement states, "CapLOC has agreed to provide, on an uncommitted basis, funding for New FMC Loan Production," which are defined as "those loans presented to CapLOC for funding by FMC *and do not include FMC Loan Purchases that ASMC and ASMFC have current commitments to purchase and FMC Loans currently funded by ASMC and ASMFC*." Service Agreement at 2 (emphasis added).

CapLOC argues, however, that the definition of "Transaction Request" establishes that FMC must have initiated the request for CBB to transfer the Disputed Loans. CapLOC Mem. at 8–9. CapLOC's reasoning is circular. The MRA defines "Transaction Request" as "a request from [FMC] to [CapLOC] to enter into a Transaction, which shall be submitted to [CapLOC] . . . and to [CBB]." MRA § 2. That CBB transferred the Disputed Loans to CapLOC does not establish that FMC made such a request to CapLOC and CBB, much less that the request would be considered a "Transaction Request" governed by the MRA. Instead, the definition of

---

[15] "The Pricing Letter is incorporated by reference into this Agreement." MRA § 1. Because the Court finds that the MRA unambiguously covers newly-originated loans only, there is no inconsistency between the MRA and the Pricing Letter; however, had there been any doubt as to the meaning of the MRA, the Pricing Letter's terms would govern, and compel the same conclusion. *Id.* ("In the event of a conflict or inconsistency between th[e] Agreement and the Pricing Letter, the terms of the Pricing Letter shall govern.").

"Transaction Request" is merely an explanation of the parties' agreed-upon procedures for FMC and CapLOC to initiate a "Transaction," which is defined in § 2 of the MRA, and has already been addressed by the Court.

The terms of the parties' written agreements—the MRA, Pricing Letter, and Service Agreement—are unambiguous. The Court concludes on the basis of these unambiguous written agreements that the MRA governs only newly-originated loans. Pricing Letter at Sch. 2-1.[16] Because the Court concludes that the MRA does not cover the Disputed Loans, CapLOC's breach of contract claim fails at the first prong, "the existence of a contract" that covers the Disputed Loans. *Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached the MRA by transferring the Disputed Loans is DENIED.

### i. FMC's Motion

FMC cross-moves for summary judgment, and argues that CapLOC's claim that FMC breached the MRA by transferring the Out-of-Trust Loans—which accounts for approximately $17 million of the total $34 million in Disputed Loans—must be dismissed. FMC Mem. at 8–12. FMC may prevail if the undisputed facts support dismissal and CapLOC cannot produce admissible evidence to create an issue of fact. *Celotex*, 477 U.S. at 322–23.

FMC argues that "the contracts at issue, by their very terms, do not cover the transfer of" the Out-of-Trust Loans. *Id.* at 11. The Court agrees, as previously explained.

The Court will address, however, CapLOC's attempts to create a dispute of fact by relying on ███████████████████████████████████████████

---

[16] Because the Court holds that the MRA covers only newly-originated loans, it need not address CapLOC's argument regarding the "ownership" of the loans. *See* CapLOC Opp. at 2, 8, ECF No. 218. It is the origination, not the ownership, that matters for determining the applicability of the contract.



[17] The Pace declaration was filed under seal and does not have an assigned ECF number.

14

█████████████████████████████████████████████████████████████

████████████████████████████████████████████ As previously

held, the MRA is unambiguous as to its applicability to newly-originated loans only.

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████ To defeat the cross-motion for summary judgment, CapLOC "must do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586.  Here, CapLOC has failed to do so.

Accordingly, FMC's motion for summary judgment is GRANTED, and the entirety of

CapLOC's breach of contract claim as it applies to the Out-of-Trust Loans is DISMISSED.

b.   Repurchase of the Unauthorized and Out-of-Trust Loans

CapLOC next moves for summary judgment on its claim that FMC breached the MRA by

refusing to repurchase the Disputed Loans.  CapLOC Mem. at 11.  FMC opposes summary

judgment and asserts that it is under no obligation to repurchase the Disputed Loans, because

such loans are not covered by the MRA.  The Court agrees with FMC.

CapLOC argues that § 2 of the MRA requires FMC to repurchase loans one business day

after the "Purchased Mortgage Loan is no longer an Eligible Mortgage Loan."  CapLOC Mem. at

11.  As previously discussed, however, the Disputed Loans are not newly-originated loans within

the meaning of "Purchased Mortgage Loans."  Therefore, CapLOC's reliance on § 2 is

misplaced.

CapLOC next invokes § 13(n) of the MRA, and argues that the provision requires FMC

to repurchase "Defective Mortgage Loans" within one business day.  MRA § 13(n).  "Defective

Mortgage Loan" is defined as "a Mortgage Loan" that is in foreclosure or faces other enumerated

problems, and a "Mortgage Loan" is in turn defined as "any first lien, one-to-four-family residential mortgage loan evidenced by a Mortgage Note and secured by a Mortgage." MRA § 2. CapLOC asserts that § 13(n) applies to the Disputed Loans. But nothing in the definition of "Mortgage Loan" supports such a conclusion, and the Court rejects that argument contrary to a plain reading of the contract, as it would run contrary to the provisions defining "Purchased Mortgage Loans," and "Transactions," as previously discussed.

As with CapLOC's first breach of contract claim, therefore, CapLOC's motion fails at the first element, "the existence of a contract" covering the Disputed Loans. *Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached the MRA by refusing to repurchase the Disputed Loans is DENIED.

### c. Payment of Accelerated Balance

Next, CapLOC moves for summary judgment on its claim that FMC breached the MRA by failing to pay an accelerated balance owed to CapLOC. CapLOC Mem. at 11–12. Specifically, CapLOC claims that it accelerated payment of the $34 million in Disputed Loans.

CapLOC asserts that it was entitled to "accelerate" the payment of any outstanding balance owed by FMC if any "Event of Default" occurred. An "Event of Default" is defined in relevant part as when FMC "default[s] in the payment of (A) any amount payable by it hereunder . . . or (C) any other Obligations, when the same shall become due and payable, whether at the due date thereof, or by acceleration or otherwise." MRA § 13. The "Events of Default" CapLOC complains of are the transfer of the Disputed Loans, for which CapLOC sought the repayment of the $34,620,757.73 that it contends FMC owes. CapLOC Mem. at 12. It argues that summary judgment is appropriate because the MRA "requires FMC to repurchase every loan sold to CapLOC under the MRA for the 'Repurchase Price,'" defined in § 13(a). CapLOC Mem.

at 11.

Because the Disputed Loans were not issued under the MRA, however, such loans cannot form the basis of the "Events of Default," and likewise are not subject to § 13(a)'s "Repurchase Price" obligation. CapLOC again fails to meet its burden on the first element of the contract claim. *Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached the MRA by failing to pay an accelerated balance is DENIED.

Because the Court has concluded that the Disputed Loans are not governed by the MRA, the remainder of Section II.A.1 of this opinion addresses CapLOC's contract claim as to newly-originated loans only.

### d. Remittal of Principal and Interest Payments

CapLOC argues that FMC also breached the MRA § 5 by failing to remit principal and interest payments to CapLOC. CapLOC Mem. at 12–13.

The MRA requires that FMC hold all "Income" "solely in trust for [CapLOC]." MRA § 5; *see also id.* § 2 ("Income" defined as "any Mortgage Loan at any time, any principal thereof then payable, and all interest, dividends or other distributions payable thereon and all proceeds thereof."). "In the event that a Default has occurred," FMC "shall remit to" CapLOC "all Income received with respect to each Purchased Mortgage Loan." *Id.* § 5.

As previously explained, CapLOC cannot sustain a breach of contract claim against FMC with regard to the Disputed Loans. However, CapLOC also claims that FMC failed to remit principal and interest payments for newly-originated loans. CapLOC Mem. at 12–13. The MRA does apply to newly-originated loans. MRA § 2 ("Purchased Mortgage Loan" defined as "each Mortgage Loan sold by [FMC] to [CapLOC] in a Transaction"). Thus, CapLOC satisfies the first element of its breach of contract claim, the existence of a contract. *Wechsler*, 330 F. Supp.

2d at 404.

As for the second element, CapLOC claims that it fully performed its obligations under the MRA by providing a line of credit to FMC. CapLOC 56.1 ¶ 36. As support for this statement of material fact, CapLOC relies on ███████████████, which is insufficient to meet its burden. ████████████████████████ Nevertheless, the Court concludes that there is no genuine dispute that CapLOC extended warehouse funding to FMC under the MRA. *See* CapLOC 56.1 ¶ 37. As such, CapLOC has met the second element of the breach of contract claim. *Wechsler*, 330 F. Supp. 2d at 404.

The third element of the claim is breach. *Id.* Here, CapLOC argues that FMC failed to remit payments on the principal and interest of Purchased Mortgage Loans, that is, the newly-originated loans governed by the MRA.[18] CapLOC Mem. at 12–13. Specifically, CapLOC claims that, as of August 20, 2018, there were 72 presumably-valid loans on CapLOC's warehouse line whose original principal balances totaled $13.6 million, CapLOC 56.1 ¶ 71, that the MRA entitles it to principal and interest payment FMC received for those loans, and that FMC has not remitted such payments, *id.* ¶¶ 74–75; Andersen 8/28/2018 Decl. ¶¶ 5–8.

Although FMC objects to the admissibility of CapLOC's evidence, FMC Opp. at 12, those objections are without citation to authority, and are not well-taken. CapLOC relies on the declaration of Troy Andersen, the President of CapLOC, whose testimony is based on personal knowledge. *See* Andersen 8/28/2018 Decl. ¶¶ 1–2. This declaration is admissible. Andersen attests that CapLOC's records indicate loans with missing principal and interest remittal payments. *Id.* ¶ 8; *id.* at Ex. 1. Moreover, the deposition testimony of Melinda Bisarek, FMC's head of accounting, CapLOC 56.1 ¶ 5, is admissible, and Bisarek describes the process of the

---

[18] Again, because the Disputed Loans were not "Transactions" under the MRA, the Court does not address claims of remittal payments for such loans.

payment, receipt, and distribution of borrower payments on the mortgage loans, CapLOC Mem. at 13. Additionally, Richard Carrington, the owner of CBB, testified at his deposition on the process of dividing borrower payments. CapLOC 56.1 ¶ 4; CapLOC Mem. at 13 (citing Carrington Dep.). Even considering this testimony in light most favorable to the non-movant, the record is sufficient to establish FMC's breach.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC failed to remit principal and interest payments to CapLOC for newly-originated loans is GRANTED as to liability.

### e. Loan Information

CapLOC contends that multiple provisions of the MRA, including Sections 8, 10(a), 16, 17, and Exhibit C, entitle it to documents and information relating to every loan CapLOC funded pursuant to the agreement, and that FMC breached the MRA by withholding loan information. CapLOC Mem. at 13–14. The Court agrees.

FMC does not contest that those provisions are in force, *see* FMC Opp. at 16–17, but asserts that it is not in breach, because FMC "voluntarily turned over" "loan origination files" prior the commencement of this suit, and FMC "[c]ontinues to service, market, and sell CapLOC funded loans" and "work with CapLOC to pay down the warehouse credit line despite this litigation." FMC Opp. at 17. These arguments are unavailing.

Even with FMC's provision of "loan origination files, which include all credit and collateral files," FMC Opp. at 17, such loan information does not encompass all of the records CapLOC argues it is entitled to under the MRA. *See* MRA § 8 (listing mortgage files and records relating to purchased mortgage loans, facility documents, among other information); § 10(a) (requiring FMC to deliver the "Mortgage File or Wet File, as applicable[,] for the related Purchased Mortgage Loans"); *see also id.* § 16. That FMC has turned over some documents

does not defeat CapLOC's motion.

FMC's failure to provide payment histories and other servicing data is well-supported by the record. CapLOC Mem. at 14; Troy Andersen 8/16/2017 Decl. ¶¶ 50–52, ECF No. 57; *id.* Ex. 4, ECF No. 57-4 (letter from counsel for CapLOC demanding, *inter alia*, balances due and digital loan files); *id.* Ex. 5, ECF No. 57-5 (letter dated August 3, 2017 from counsel for FMC stating that "FMC . . . will not be complying with those demands"). Moreover, there is no genuine dispute that CapLOC has performed, in that it funded the newly-originated loans, and was within its right to request the loan information. *See Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached the MRA by failing to turn over loan information is GRANTED as to liability.

### f. Representations and Warranties

CapLOC moves for summary judgment on its claim that FMC violated the MRA by breaching certain representations and warranties. CapLOC Mem. at 15–16. FMC disputes that it breached any of those provisions. FMC Opp. at 14–16.

CapLOC relies on § 3(a) of the Pricing Letter, which requires that FMC "maintain an Adjusted Tangible Net Worth of not less than $16,000,000." CapLOC Mem. at 15. CapLOC also relies on the deposition testimony of Bisarek as FMC's corporate representative, who testified in October 2018 that FMC had at least $41 million in liabilities at that time, and that FMC did not expect to generate anything near to that amount in income by the end of 2018. *Id.* (citing Bisarek FMC Corp. Rep. Dep. 95:25–96:23, Markham Decl. Ex. 22, ECF No. 221-3[19]).

Next, CapLOC contends that § 3(c) of the Pricing Letter requires FMC to "ensure that it has cash and Cash Equivalents . . . in an amount not less than $3,500,000." CapLOC Mem. at 15

---

[19] Exhibit 22 was filed under seal and does not have an assigned ECF number.

(citing Pricing Letter § 3(c)). Bisarek, as FMC's corporate representative, testified that FMC had not had $3.5 million in cash since sometime before the fall of 2016. Bisarek FMC Corp. Rep. Dep. 104:10–105:15.

Section 11(s) of the MRA also represents that FMC was solvent "[a]s of the date hereof and immediately after giving effect to each Transaction." MRA § 11(s). Solvency requires that the fair value of the FMC's assets exceed the fair value of its liabilities. *Id.* Testimony by Bisarek establishes that FMC violated that representation. CapLOC Mem. at 15 (citing Bisarek Dep. 48:24–49:12, 52:11–25, 55:8–16, 71:14–78:17, 145:16–146:17, 172:8–173:6; Bisarek FMC Corp. Rep. Dep. 74:19–77:21 (testifying that, as of the date of the MRA, FMC owed its prior warehouse lenders $260 million and did not have the ability to pay that off)).

Therefore, the Court concludes that CapLOC has met its burden of establishing FMC's liability on this claim: the existence of agreements, CapLOC's performance under those agreements, and FMC's breach. *Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached representations and warranties concerning FMC's operations is GRANTED as to liability.

### g. Misuse of Escrow and Custodial Accounts

CapLOC moves for summary judgment on its claim that FMC misused escrow and custodial accounts. CapLOC Mem. at 16–17.

CapLOC refers to the following provisions in Schedule 1 of the MRA governing escrow and custodial accounts:

- Representation "F" ("Compliance with [r]equirements of [l]aw"), which requires that "[a]ny and all [r]equirements of [l]aw . . . applicable to the Mortgage Loan have been satisfied and complied with";

- Representation "Q" ("No Outstanding Charges"), which requires that, for each loan, "an escrow of funds or a tax and insurance set-aside has been established in

21

an amount sufficient to pay every such item which remains unpaid and which has been assessed but is not yet due and payable";

- Representation "II" ("Origination and Collection Practices"), which requires that, for each loan, "[a]ll escrow deposits and escrow payments . . . have been collected and handled in full compliance with all [r]equirements of [l]aw[.]"

CapLOC Mem. at 16.

Bisarek testified that FMC, at McCord's direction, routinely took funds from accounts to pay taxes, insurance, mortgage insurance premiums, and other expenses. Bisarek Dep. 72:6–78:17, 145:16–146:22 (testifying to borrowing from escrow account for operational expenses); *see also, e.g.*, Andersen 11/15/2018 Decl. Ex. 2 (email from Bisarek regarding borrowing from accounts, including from escrow account, in May 2017); Pace Decl. at FMC 229774 (email dated April 4, 2017 from Bisarek discussing repaying money into "Escrow Disbursement"); *id.* at FMC 271056 (email dated April 21, 2017 from Bisarek stating, "We had to borrow $55,000 to end our day positive."); *id.* at FMC 383508 (email dated July 21, 2017 from Bisarek to McCord stating, "We need $490,000 to cover our day and another $255,000 to put back into Esc Disb . . . .").

The Court concludes that CapLOC has established that FMC breached the MRA by violating representation "Q," which provides that "an escrow of funds . . . has been established in an amount sufficient to pay every such item which remains unpaid and which has been assessed but is not yet due and payable." MRA Sch. 1. Here, the borrowing of escrow funds necessarily reduces the amount that is sufficient to pay the obligations for which the escrow money was set aside. FMC's argument that it only borrowed some escrow funds and returned funds "as the account needed," FMC Opp. at 13 (internal citation and quotation omitted), does not create a genuine dispute of fact. Representation "Q" requires that an escrow fund be created for the purpose of covering certain obligations, and FMC violated that representation by using the funds for other purposes.

The Court does not, however, find that FMC violated representations "F," and "II," which require that FMC comply with "[r]equirements of [l]aw." MRA at Sch. 1. CapLOC relies on an expert report for its assertion that these practices violated any "[r]equirements of [l]aw," namely, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–65(b), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601. *See* CapLOC Mem. at 16 (citing Expert Report of Jim Reynolds). CapLOC, however, makes no effort to explain what provisions of those statutes, or any other law, FMC's actions violate. Because CapLOC has failed to establish that FMC violated a law, it does not meet its burden in showing that FMC violated representations F and II.

Nevertheless, CapLOC has met its burden and established breach of representation Q of Schedule 1 of the MRA. *Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached the MRA by using escrow and custodial funds for operating expenses is GRANTED with respect to liability.

### h. Misdirecting Payoffs

CapLOC argues that § 8(a) of the MRA entitles it to "all rights, title, and interests in, to and under the Purchased Mortgage Loans." CapLOC Mem. at 17. It further asserts that § 8(b) and Exhibit C of the MRA grant CapLOC full and irrevocable power of attorney over the loans CapLOC funded. *Id.* CapLOC argues that these provisions entitle it to payments that FMC misdirected. The Court agrees in part.

The provisions of the MRA are as stated, *see* MRA § 8(b) and Ex. C; *see also id.* § 16 (granting ownership of credit files and records to CapLOC), and testimonial evidence establishes that FMC misdirected payments. Bisarek testified that, as of April 4, 2017, FMC had received full payoffs toward about $1.2 million in CapLOC-funded loans, but had failed to forward the

payments to CapLOC.  Bisarek Dep. 71:14–20; *see also id.* 72:6–78:17 (testifying that, from approximately 2016 through August 2017, FMC was "performing cash management triage, just trying to cover our needs and keep ourselves afloat," and that, at McCord's direction, FMC used borrowers' payments to pay "rent, payroll, and utilities" rather than remitting those funds to the warehouse lender); *id.* 165:14–166:9.  FMC's argument that it used the payoffs to "self-fund" construction loans is unpersuasive.  Bisarek's testimony indicates that FMC received these funds on CapLOC-funded warehouse lines and not on FMC-funded construction loans.  Bisarek Dep. 165:14–166:16.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached the MRA by misdirecting payments is GRANTED as to liability.

i.   Notice of Default

CapLOC argues that FMC breached the MRA by failing to give notice of certain events to CapLOC as required by §12(c).  CapLOC Mem. 18–19.

Section 12(c)(i)(A) requires that FMC "immediately" notify CapLOC of "the occurrence of any Default or Event of Default."  *Id.* at 18.  Section 13 of the MRA sets forth several "Events of Default," including defaults on payments of "any . . . obligations," a breach of "[a]ny representation [or] warranty," an insolvency event, and a defective mortgage loan.  MRA § 13.  CapLOC argues that FMC breached § 12(c) by failing to notify CapLOC of: (1) the Disputed Loans that had been transferred to its warehouse line, (2) FMC's misdirected payments, (3) FMC's misuse of escrow funds for operating expenses, (4) FMC's failure to maintain the minimum net worth required by the Pricing Letter or the minimum amount of cash or cash equivalents.  CapLOC Mem. at 18–19.

Moreover, § 12(c)(ii)(E) requires that FMC notify CapLOC "as soon as reasonably possible" of "any event that resulted, or has a possibility of resulting, in a Material Adverse

Effect." MRA § 12(c)(ii)(E); *see also id.* § 2 (defining "Material Adverse Effect"). CapLOC argues that FMC breached § 12(c)(ii)(E) by failing to timely notify CapLOC of FMC's transfer of all of its loan officers and selling of its remaining assets, and by taking action toward making that transfer and sale without providing any security interest in the proceeds from the deal to CapLOC, which CapLOC argues "materially and adversely affect[ed] CapLOC and the business, operations, financial condition or prospects of FMC." CapLOC Mem. at 19 (internal quotation marks and citations omitted).

The Court agrees that FMC's misdirection of payments, misuse of escrow funds, and failure to maintain the minimum net worth required by the Pricing Letter qualify as "events of default," and that there is no genuine dispute that FMC failed to "immediately" notify CapLOC of such events. Moreover, the Court holds that FMC's failure to notify FMC of its steps toward transfer and sale of its loan officers and remaining assets without providing security to CapLOC violates § 12(c)(ii)(E), in that these events, in the very least, concern events that "ha[ve] a *possibility* of resulting [] in a Material Adverse Effect." MRA § 12(c)(ii)(E) (emphasis added). FMC did not notify CapLOC of its intentions of taking these steps until after FMC discussed the transfer and sale with Academy. Andersen 11/15/2018 Decl. ¶ 5. FMC does not dispute the timeline CapLOC provides. No reasonable jury would find that FMC gave notice to CapLOC "as soon as reasonably possible," as MRA § 12(c)(ii)(E) requires.

Having concluded that FMC breached the notice requirements under the MRA in at least four ways, the Court need not reach the additional grounds on which CapLOC argues it is entitled to summary judgment on this claim. CapLOC has met its burden for establishing breach of contract. *Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached the MRA by failing to give notice is GRANTED as to liability.

j.   Sell Loans Timely

Next, CapLOC argues that FMC breached the MRA by failing to sell loans timely.
CapLOC Mem. at 19–21.

Section 2 of the MRA requires FMC to repurchase loans on "a date no later than the
applicable Aging Limit," MRA § 2; the maximum aging limit for any loan funded under the
MRA is 270 days.  Pricing Letter § 1 (defining "Aging Limit"), ECF No. 24-5.  CapLOC argues
that, as of August 20, 2018, all valid loans remaining on CapLOC's warehouse line had exceeded
the maximum aging limit.  CapLOC Mem. at 20.  Specifically, Andersen attests that, as of
August 20, 2018, the 72 valid loans remaining on CapLOC's line were considered aged, and that
the loans had remained on CapLOC's line an average of 485 days as of August 28, 2018, even
though the loans should have been sold to investors in 30 days or less.  Andersen 8/28/2018
Decl. ¶ 10. FMC contends that CapLOC does not offer proof, besides Andersen's declaration,
establishing the date that the loans aged.  FMC Opp. at 19.  However, the declaration is
meaningful evidence, and because FMC does not dispute the facts asserted in Andersen's
declaration, the Court finds no genuine issue of material fact.  The Court concludes that CapLOC
has met its burden of establishing breach of contract.  *Wechsler*, 330 F. Supp. 2d at 404.

Accordingly, CapLOC's motion for summary judgment on its claim that FMC breached
the MRA by failing to timely sell loans is GRANTED as to liability.

k.   Damages

The fourth element of CapLOC's breach of contract claims is damages.  *Wechsler*, 330 F.
Supp. 2d at 404.  The Court will resolve two questions regarding damages on the contract claim,
and set the remaining ones for trial.

i.   McCord's Personal Liability for Damages

CapLOC argues that McCord is personally liable for damages arising under the MRA.

CapLOC Mem. at 20–21; *see also* FMC 56.1 ¶ 29.  The Court agrees.

The McCord Guaranty states that McCord "unconditionally and irrevocably guarantees to [CapLOC] . . . the prompt and complete payment and performance by [FMC] when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations."  McCord Guaranty § 2(a), ECF No. 19-4.  "Obligations" include "all obligations and liabilities of [FMC] to [CapLOC] . . . which may arise under, or out of or in connection with the MRA[.]"  *Id.* § 1(b).  FMC and McCord do not dispute that the McCord Guaranty so states.  *See generally* FMC Opp.; CapLOC 56.1 ¶ 34.  Because the contract's terms are unambiguous, the Court need not look further.  *Yafa Jewelry Inc.*, 42 F. Supp. 2d at 310.  The Court holds that McCord is personally liable for damages on CapLOC's claims arising under the MRA that are not otherwise dismissed in this opinion.

Accordingly, CapLOC's motion for summary judgment on its claim that McCord is personally liable for damages arising under the MRA is GRANTED.

ii.    Construction Loans

Having determined that CapLOC is entitled to damages from FMC and McCord, there remains the question of the amount of damages.  Triable facts remain regarding damages, including (1) the portion of the one-time closing loans to which CapLOC is entitled, *see* CapLOC Mem. at 20–21; FMC Opp. at 21–22; (2) the amount that FMC failed to remit to CapLOC for payments received on Purchased Mortgage Loans, *see, e.g.*, CapLOC 56.1 ¶¶ 54–57, 59, 61, 75 (disputed as to how much of borrower payoffs FMC misdirected or failed to remit); and (3) the extent of CapLOC financial losses stemming from untimely sold loans, *id.* ¶¶ 69–70.

However, to narrow the scope of trial on damages, the Court will clarify the extent to which CapLOC can claim damages from construction loans.  CapLOC argues that it is entitled to

damages amounting to the full purchase price that an investor pays for any loan CapLOC funded, not just the portion of the loan CapLOC actually advanced. CapLOC Mem. at 20–21. FMC points out that, consistent with the parties' agreement in the Addendum to the Pricing Letter, "so long as the Conversion Date has not occurred, each Progress Payment shall be deemed payment in full for the relevant Agency Eligible Single-Closing Loans as of the date of such payment," Markham Decl. Ex. 2, Addendum § 2.4. In other words, FMC argues that "any security interest CapLOC might claim on the construction loans . . . would extend to *only those amounts it actually extended* as each such progress payment was deemed 'payment in full.'" FMC Opp. at 22 (emphasis added). FMC asserts that because it has remitted to CapLOC the portion of the construction loan that CapLOC actually funded, FMC has met its payment obligations on the construction loans. CapLOC neither responds to FMC's argument, nor indicates whether the Conversion Date referenced in § 2.4(b), which would allow for an exception to FMC's reading of the Addendum, has occurred. *See generally* CapLOC Mem.; CapLOC Reply.

The Court, therefore, holds that CapLOC is not entitled to damages on the full purchase price of the construction loans, but rather only the portion that CapLOC actually advanced.

### 2. Fraud and Fraudulent Concealment

Having addressed CapLOC's breach of contract claims, the Court now turns to CapLOC's motion on the remaining causes of action, beginning with fraud and fraudulent concealment. CapLOC Mem. at 21–24.

"The elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir. 1987). At the summary judgment stage, "[e]ach element of the fraud claim must be shown by clear and convincing evidence." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp 2d 206, 219 (S.D.N.Y. 2007),

*aff'd*, 354 F. App'x 496 (2d Cir. 2009). "This evidentiary standard demands a high order of proof . . . and forbids the awarding of relief whenever the evidence is loose, equivocal or contradictory." *Id.* (internal quotation marks and citation omitted). "Clear and convincing evidence may, however, be circumstantial, even on summary judgment." *Id.*

"The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 410 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

As a threshold matter, FMC argues that CapLOC's fraud and fraudulent concealment claims should be denied because they are duplicative of its contract claim. FMC Opp. at 22. The Court disagrees. "[U]nder New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007).

A duty to disclose separate from a contractual duty may also arise if the defendants made a partial or ambiguous statement that required additional disclosure in order to avoid misleading the other party. *See id.* at 184; *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)) (noting that under New York law, a duty to disclose exists "where [a] party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth."). A plaintiff may also bring parallel fraud and breach of contract claims when there are "[m]isrepresentations of present facts made post-contract formation [that] are collateral or extraneous to the contract." *Minnie Rose LLC v. Yu*,

169 F. Supp. 3d 504, 520 (S.D.N.Y. 2016). The Court concludes that CapLOC's fraud and fraudulent concealment claims are not duplicative of its breach of contract claim, for the same reason certain theories of CapLOC's breach of contract claim failed: the MRA does not cover the Disputed Loans.

Next, FMC argues that a dispute of fact exists as to scienter. FMC Opp. at 23. Here, FMC is correct. "Issues of motive and intent are usually inappropriate for disposition on summary judgment." *Wechsler v. Steinberg*, 733 F.2d 1054, 1058–59 (2d Cir. 1984). Though CapLOC has marshalled compelling evidence suggesting fraudulent intent,[20] the record is insufficient to establish such intent by clear and convincing evidence as a matter of law. CapLOC must, therefore, prove scienter by clear and convincing evidence at trial.

Accordingly, CapLOC's motion for summary judgment on its fraud and fraudulent concealment claims is DENIED.

### 3. Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty under New York law are "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns., Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004). "Generally, no fiduciary duties arise where parties deal at arm's length in conventional business transactions." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 195 (S.D.N.Y. 2006). Moreover, "under New York law, a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand."

---

[20] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████

*Grund v. Delaware Charter Guar. & Tr. Co.*, 788 F. Supp. 2d 226, 248 (S.D.N.Y. 2011) (internal quotation marks and citation omitted), *reconsideration granted in part and denied in part*, No. 09 Civ. 8025, 2011 WL 3837146 (S.D.N.Y. Aug. 30, 2011).

CapLOC contends that FMC breached its fiduciary duty by failing to serve as "trustee over principal and interest payments it receives on borrowers' loans that were funded by CapLOC, and . . . to service those loans for CapLOC's benefit before they are sold." CapLOC Mem. at 24–25. FMC responds that CapLOC's breach of fiduciary claim is duplicative of its contract claims. FMC Opp. at 24. The Court agrees with FMC. CapLOC's position is that "the *same* undisputed conduct that breached the parties' contracts constitutes fraud by Defendants and also results in a breach of the fiduciary duties Defendants owed to CapLOC." CapLOC Mem. at 24 (emphasis added). Additionally, even if CapLOC's breach of fiduciary claim were not duplicative of its breach of contract claim, "parties dealing at arms length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation, absent extraordinary circumstances." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 194 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).

Accordingly, CapLOC's motion for summary judgment on its breach of fiduciary duty claim is DENIED.

### 4. Unjust Enrichment, Money Had and Received, and Disgorgement

CapLOC next moves for summary judgment on count seven of the complaint, which includes claims for (1) unjust enrichment, (2) money had and received, and (3) disgorgement. CapLOC Mem. at 25. The Court addresses each claim in turn.

### a. Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted). However, "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*," and "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006) (internal quotation marks and citations omitted).

FMC and McCord oppose summary judgment on the ground that unjust enrichment claims are not properly brought in contract cases. FMC Opp. at 25. The Court rejects this argument.

Here, the MRA is a valid and enforceable written contract governing the parties' disputes over the loans originated thereunder. Therefore, any claim of unjust enrichment resulting from loans covered by the MRA—*i.e.*, newly-originated loans—is precluded. However, as FMC and McCord repeatedly assert, the Disputed Loans are not governed by the MRA. *See* FMC Opp. at 8–12. "Where, as here, there is a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quasi-contract as well as breach of contract, and will not be required to elect his or her remedies." *Plumitallo v. Hudson Atl. Land Co., LLC*, 903 N.Y.S.2d 127, 128 (N.Y. App. Div. 2010). As such, CapLOC can pursue a claim of unjust enrichment as to the Disputed Loans.

Moreover, the Court concludes that CapLOC has established that it is entitled to summary judgment on this claim. First, CapLOC has shown that FMC and McCord benefitted.

There is no genuine dispute that FMC originated the Disputed Loans in its previous agreements with ASMC, ASFMC, or CBB. *E.g.*, Bisarek Dep. 167:3–22. And FMC and McCord benefitted when CapLOC became the warehouse lender for the Disputed Loans, because FMC found in CapLOC a buyer who accepted approximately $34 million of undesirable loans without an enforceable agreement, representations, and warranties. *See* Owings Dep. 131:10–132:11 (testifying that Owings, McCord, and Andersen discussed CapLOC taking on old loans, but only after CapLOC had "protections in place"). Once the Disputed Loans were transferred onto CapLOC's line, FMC was relieved of its obligations regarding these problematic loans under its agreements with ASMC, ASMFC, or CBB. *Cf. Lake Minnewaska Mountain Houses Inc. v. Rekis*, 686 N.Y.S.2d 186, 187–88 (N.Y. App. Div. 1999) (holding that plaintiff had established that defendant "clearly benefitted . . . in that he was spared a degree of expense or loss he would otherwise have incurred").

Second, FMC's benefit came at CapLOC's expense. By taking on FMC's Disputed Loans, which were aged and out-of-trust, CapLOC assumed financial liabilities without contractual recourse against FMC and McCord, and CapLOC extended lines of credit on loans that were out-of-trust and unlikely to be sold. CapLOC's financial injury satisfies this element.

Third, equity and good conscience require restitution here. Undisputed evidence shows that FMC and McCord were integral players in the transfer of such loans to CapLOC's warehouse line. *See* Carrington Dep. 116:3–118:12 (testifying that FMC requested that CBB initiate transfers of loans on ASMC and ASMFC's warehouse line to CapLOC's); Pace Decl. at FMC 279045 (email from McCord stating, "I have asked Richard [Carrington] to select the loans we need to move. The MERs [out-of-trust] ones are obviously first."); *id.* at FMC 273460 (emails from McCord stating, "My second objective is to get the bridge loan and loans for sale warehousing started. Included in this will be the MERS loans. . . . I think [this] is the best

solution for both banks – move all of the loans we can."); Carrington Dep. 177:19–180:2 (testifying that the "MERS loans" are synonymous with "out of trust" loans). Though FMC and McCord are correct that the MRA fails to cover the Disputed Loans—because CBB, rather than FMC, sent the funding requests for these loans, and because ASMC and ASMFC, rather than FMC and McCord, transferred the loans—the record is replete with evidence that FMC and McCord were aware of the transfers and facilitated, if not orchestrated, the transfers.

The Court concludes, therefore, that no triable issue of fact remains for the jury on the question of FMC and McCord's liability for unjust enrichment. There is no genuine dispute that, prior to signing the MRA with CapLOC, McCord and FMC had originated loans under agreements with ASMC, ASMFC, or CBB; that $34 million worth of loans previously originated by FMC under those agreements were transferred to CapLOC's warehouse line; that FMC and McCord knew of and facilitated the transfer of these loans; that these loans were aged or out-of-trust; and that the agreements FMC and CapLOC signed did not cover such loans. ████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████

FMC and McCord are liable for unjust enrichment. Damages will have to be proven at

trial.[21]

### b. Money Had and Received

"The essential elements in a claim for money had and received under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) (citing *Miller v. Schloss*, 113 N.E. 337 (N.Y. 1916)).

FMC again opposes this claim as precluded where a valid and enforceable contract exists. FMC Opp. 25. FMC is, again, incorrect as to the Disputed Loans. Money had and received "is an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another." *Parsa v. State*, 64 N.Y.2d 143, 148 (1984).

Here, however, CapLOC paid approximately $34 million for the Disputed Loans to ASMC and ASMFC—not to FMC. FMC Counter 56.1 ¶ 31. This claim, therefore, fails at the first prong, because FMC did not have and receive money from CapLOC for the Disputed Loans.

### c. Disgorgement

Disgorgement is usually sought in cases brought by investors or the Government alleging securities violations. *See, e.g.*, *S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006) ("Upon awarding disgorgement, a district court may exercise its discretion to direct the money toward victim compensation or to the United States Treasury."). This is not such a case. Regardless,

---

[21] FMC's arguments regarding damages from unjust enrichment wrongly focus on the amounts FMC is alleged to have failed to remit in principal and interest payments. FMC Opp. at 27–28. Such arguments are properly made, and have already been addressed, with respect to CapLOC's breach of contract claim regarding FMC's failure to remit principal and interest payments on newly-originated loans. With respect to CapLOC's unjust enrichment claim, however, the question is not how much FMC failed to remit on loan payments covered by the MRA, but rather how much FMC was unjustly enriched by the transfer of loans *not* covered by the MRA, that is, the Disputed Loans.

under New York law, "disgorgement may not stand as an independent cause of action as disgorgement of payments is really a damage claim." *Piccarreto v. Mura*, 970 N.Y.S.2d 408, 426 (N.Y. Sup. Ct. 2013) (citation omitted).

Accordingly, CapLOC's motion for summary judgment on its unjust enrichment claim is GRANTED as to liability with respect to the Disputed Loans; CapLOC's motion for summary judgment on its money had and received and disgorgement claims are DENIED.

### 5. Permanent Injunction

"To obtain a permanent injunction, a party must establish three things: (1) success on the merits; (2) the lack of an adequate remedy at law; and (3) irreparable harm if relief is not granted." *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 551 (2d Cir. 2011) (citing *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)).

CapLOC argues that it is entitled to "an injunction forcing Defendants to turn over all servicing, marketing, and selling of CapLOC's loans to CapLOC or its designee," and that "a money judgment against Defendants [] is not adequate because Defendants cannot pay that judgment." CapLOC Mem. at 26. The Court previously considered and rejected CapLOC's assertion of FMC and McCord's insolvency. *See* ECF No. 53 (denying CapLOC's motion for a preliminary injunction); ECF No. 226 (denying CapLOC's motion for reconsideration). Specifically, the Court held that CapLOC "had not demonstrated that Defendant was insolvent, and, therefore, because the only relief [CapLOC] sought was monetary, it could not demonstrate irreparable harm." ECF No. 226 at 2.

The standard for demonstrating insolvency is high. A plaintiff must offer more than allegations of the defendant's "weak financial condition." *Seda Specialty Packing Corp. v. Am. Safety Closure Corp.*, No. 95 Civ. 4745, 1995 WL 404821, at *2 (S.D.N.Y. July 7, 1995). Rather, the plaintiff must proffer evidence "sufficient to meet the high standard required to

satisfy a finding of current or imminent insolvency." *WestLB AG v. BAC Fla. Bank*, No. 11 Civ. 5398, 2012 WL 3135825, at *5 (S.D.N.Y. Aug. 2, 2012).

For example, in *General Transportation Services, Inc. v. Kemper Insurance Co.*, No. 03 Civ. 620, 2003 WL 21703635 (N.D.N.Y. June 25, 2003), the defendant had defaulted on $700 million of its notes; its credit rating had been downgraded; it had "substantially reduced its workforce," and the plaintiff alleged that a state authority was investigating its financial stability. *Id.* at *3. Nevertheless, the court found that "[a]lthough [p]laintiff arguably raises questions about [defendant's] present financial condition, its assertions fall far short of establishing that [defendant] is in 'imminent' danger of becoming insolvent." *Id.* at *4. Similarly, in *Meringolo v. Power2ship*, No. 03 Civ. 4476, 2003 WL 21750009 (S.D.N.Y. July 28, 2003), the plaintiff alleged that the defendant had never earned a profit and was "rapidly being drained of its resources." *Id.* at *4. Nevertheless, the court found that the plaintiff had failed to establish the defendant's insolvency. *Id.* at *4–5.

CapLOC's evidence of FMC's insolvency is insufficient. As with its motion for reconsideration, CapLOC relies on the testimony of Bisarek, FMC's chief accountant, who averred that FMC was in "financial 'chaos' and performing 'cash-management triage.'" CapLOC Mem. at 23; *see* Bisarek Dep. 73:5–74:10, 116:8–11. The deposition transcript reveals, however, that Bisarek was testifying about a period from 2016 to August 2017, and was not attesting to FMC's ongoing or present condition. Bisarek Dep. 73:5–74:10, 116:12–13. CapLOC's references to documentary evidence, such as emails, *see, e.g.*, Pace Decl. at FMC 478657; 475876, also indicate past cash limitations, and fail to suffice to "meet the high standard required to satisfy a finding of *current* or *imminent* insolvency." *WestLB AG*, 2012 WL 3135825, at *5 (emphases added). The Court is unpersuaded that the "drastic and extraordinary remedy" of an injunction is merited here. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139,

165 (2010).

Accordingly, CapLOC's request for a permanent injunction is DENIED.

### B. Eli Global's Motion for Summary Judgment

Eli Global moves for summary judgment on FMC's only claim surviving the motion to dismiss, a breach of a Type II preliminary agreement. Eli Global contends that FMC cannot prove causation. Eli Global Mem. at 2–7, ECF No. 231. For the reasons below, Eli Global's motion is GRANTED in part and DENIED in part.

As previously set forth in this opinion, "[t]he elements of a breach of contract claim in New York are (1) the existence of a contract, (2) plaintiff's performance, (3) breach by the defendant, and (4) damages." *Wechsler*, 330 F. Supp. 2d at 403–04. "A plaintiff seeking damages for breach of contract . . . must demonstrate that the damages were caused by and are directly traceable to the defendant's breach." *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 731 (2d Cir. 1992) (internal quotation marks, alterations, and citations omitted). In order to defeat a motion for summary judgment, the nonmoving party "must present concrete particulars," and "[t]here is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Marathon Enterprises*, 2003 WL 355238, at *4.

Eli Global contends that summary judgment is warranted because the record negates the causation element of damages; that is, it argues that FMC's damages stem only from CapLOC's filing of the suit, which Eli Global cannot be said to have caused, and not from Eli Global's alleged failure to negotiate in good faith. Eli Global Mem. at 3, ECF No. 220. FMC disagrees, and asserts that its damages flow from both CapLOC's lawsuit and Eli Global's failure to negotiate in good faith. FMC Opp. to Eli Global at 17–18. In other words, FMC alleges two breaches: one based on CapLOC's disruption of a deal contemplated between FMC and another

company named Academy—Eli Global's liability being premised on FMC's theory that CapLOC and Eli Global are alter egos; and a second breach based on Eli Global's failure to negotiate in good faith in the putative deal between FMC and Eli Global. The Court addresses each alleged breach in turn.

First, FMC alleges that CapLOC's initiation of this action thwarted FMC's potential purchase by Academy. For instance, Gary Trugman, FMC's damages expert, testified that FMC's claimed damages occurred when Academy pulled its offer in July 2017, when the company learned that CapLOC contemplated suit. Gary Trugman Dep. 9:19–25 (testifying that Eli Global caused FMC $22 million to $24 million in damages), 17:10–14 (testifying that the measure of damages is the fair market value of FMC), 95:24–96:3 (testifying that Academy terminated its offer with FMC after learning of CapLOC's lawsuit);[22] *see also* George Akers Vol. 2 Dep. 36:18–37:5, Pace Decl. Ex. 14 (FMC's corporate representative George Akers testifying that FMC's damages stemmed from CapLOC filing of the instant suit). Eli Global argues that whatever damages stem from CapLOC's filing of the lawsuit cannot be attributed to Eli Global. The Court agrees.

In a prior ruling, the Court denied Eli Global's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, because FMC had adequately pleaded that Eli Global was an alter ego of CapLOC. June 12, 2018 Opinion at 13–16. However, in moving for summary judgment, Eli Global offers evidence to prove that Eli Global and CapLOC are separate legal entities, not alter egos, for purposes of liability, and contends that FMC cannot produce evidence to the contrary. *See* Eli Global Mem. at 3–5. FMC does not challenge this argument or dispute the record. *See generally* FMC Opp. to Eli Global. Thus, the Court finds that FMC has abandoned its claim of

---

[22] Gary Trugman's deposition transcript was filed under seal and does not have an assigned ECF number.

alter ego relationship.  *See Simon v. City of New York*, No. 14 Civ. 8391, 2017 WL 57860, at *5

n.5 (S.D.N.Y. Jan. 5, 2017) (noting that a court may infer waiver or abandonment of a claim or

defense when nonmovant fails to respond to movant's argument on the matter in summary

judgment papers (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)).  Because Eli

Global and CapLOC are not alter egos, Eli Global cannot be liable for conduct attributable solely

to CapLOC.

Next, the Court addresses FMC's second causal theory, that Eli Global breached a Type

II preliminary agreement in negotiations over a potential deal between FMC and Eli Global.

FMC alleges that Eli Global breached a Type II preliminary agreement by failing to negotiate in

good faith.[23]  Specifically, FMC claims that Eli Global exhibited bad faith by coordinating

CapLOC's placement as FMC's sole warehouse lender, and then using FMC's dependency on

CapLOC's warehouse credit line as leverage in Eli Global's negotiations with FMC.  FMC

claims that Eli Global threatened CapLOC's withdrawal of warehouse funding if FMC refused

Eli Global's offer of a reduced purchase price for FMC, and a revised proposed employment

agreement for McCord, which decreased McCord's compensation, title, and role.  Third-Party

Compl. ¶¶ 165–168.  FMC argues that such leveraging was done in bad faith, and that, because

FMC did not accept Eli Global's revised proposal, FMC suffered (1) reliance damages, and (2)

consideration of expectancy, otherwise known as benefit-of-the-bargain, damages.  FMC Opp. to

Eli Global at 16–17, ECF No. 220.

With regard to reliance damages, courts in this district have recognized the availability of

---

[23] A Type II agreement "does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the . . . objective within the agreed framework."  *Brown v. Cara*, 420 F.3d 148, 157 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also* June 12, 2018 Opinion at 21–24 (holding that FMC stated a cognizable claim for a breach of a Type II preliminary agreement).

such damages to compensate a plaintiff for the out-of-pocket expenses incurred in good faith

partial performance when a defendant breaches a Type II preliminary agreement.  *E.g.*, *L-7*

*Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 431 (2d Cir. 2011) ("[O]ut-of-pocket costs

incurred in the course of good faith partial performance are appropriate." (citation omitted)).

Eli Global fails to address FMC's argument that the alleged breach of the Type II preliminary

agreement cost it out-of-pocket expenses, including approximately $77,000 in attorney's fees

that FMC asserts it expended in its good faith partial performance.  FMC Opp. to Eli Global at

17; *see generally* Eli Global Mem; Eli Global Reply, ECF No. 224.  Therefore, in viewing the

record in the light most favorable to the nonmoving party, *Koch*, 287 F.3d at 165, the Court

concludes that FMC has presented a triable issue as to whether Eli Global's alleged breach of the

Type II preliminary agreement caused reliance damages.

FMC also claims lost profits, or expectancy, damages stemming from Eli Global's

alleged failure to negotiate in good faith.  FMC Opp. to Eli Global at 17–18.  Specifically, FMC

complains that Eli Global's bad faith negotiations caused FMC's deals with Eli Global and

Academy to fail.  *See* Third-Party Compl. ¶ 97 (alleging $40 million in damages); Trugman Dep.

9:19–25, 17:10–14 (testifying that Eli Global caused FMC damages of $22 million to $24

million, which was FMC's fair market value in July 2017 when Academy was contemplating a

deal with FMC).

However, expectancy damages are inappropriate.  Generally "lost profits are not

available where," as here, "no agreement is reached."  *L-7 Designs*, 647 F.3d at 43.  FMC urges

the Court to make an exception to the rule, arguing that courts in this district have not foreclosed

expectancy damages in all such circumstances.  FMC Opp. to Eli Global at 17.  But attributing

FMC's lost profits to Eli Global's alleged failure to negotiate in good faith is "speculative at

best."  *Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, No. 14 Civ. 7343, 2015 WL

5671724, at *20 (S.D.N.Y. Sept. 22, 2015) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 74 n.2 (2d Cir. 1989)).  After all, FMC may not have succeeded in reaching a deal even absent Eli Global's alleged breach.  *See id.* ("[D]efendant's alleged failure to bargain in good faith is not a but-for cause of plaintiff's lost profits, since even with the best faith on both sides the deal might not have been closed." (internal quotation marks, citation, and alterations omitted)).  Moreover, the record suggests that the failure of the Academy deal was caused by CapLOC's suit.  Trugman Dep. 95:24–96:3 (testifying that Academy terminated its negotiations with FMC after learning of CapLOC's lawsuit).  Therefore, for the additional reason that Eli Global cannot be held liable for damages stemming solely from CapLOC's suit, lost profits damages are not appropriate.

Accordingly, Eli Global's motion for summary judgment is GRANTED as to FMC's claim for lost profits damages, and DENIED as to FMC's claim for reliance damages.

## CONCLUSION

For the reasons stated above:

1. CapLOC's motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the portion of CapLOC's motion seeking summary judgment on its claim for:

   a. Breach of contract against FMC and McCord for transferring the Disputed Loans is DENIED.

   b. Breach of contract against FMC and McCord for failing to repurchase the Disputed Loans is DENIED.

   c. Breach of contract against FMC and McCord for failing to pay the accelerated balance of the Disputed Loans is DENIED.

   d. Breach of contract against FMC and McCord for failing to remit principal and interest payments of the newly-originated loans is GRANTED.

   e. Breach of contract against FMC and McCord for failing to provide loan information for the newly-originated loans is GRANTED as to liability.

   f. Breach of contract against FMC and McCord for breaching certain representations

and warranties regarding the newly-originated loans is GRANTED as to liability.

g. Breach of contract against FMC and McCord for misusing escrow and custodial accounts of the newly-originated loans is GRANTED as to liability.

h. Breach of contract against FMC and McCord for misdirecting payoffs for the newly-originated loans is GRANTED as to liability.

i. Breach of contract against FMC and McCord for failing to provide notice of default and other adverse events with respect to the newly-originated loans is GRANTED as to liability.

j. Breach of contract against FMC and McCord for failing to sell the newly-originated loans timely is GRANTED as to liability.

k. McCord's personal liability for damages with respect to the newly-originated loans is GRANTED as to liability.

l. Fraud and fraudulent concealment against FMC and McCord is DENIED.

m. Breach of fiduciary duty against FMC and McCord is DENIED.

n. Unjust enrichment against FMC and McCord with respect to the Disputed Loans is GRANTED as to liability.

o. A permanent injunction against FMC and McCord is DENIED.

2. FMC and McCord's motion for partial summary judgment is GRANTED in part and DENIED in part. Specifically, the portion of FMC and McCord's motion seeking dismissal of:

a. Count One, to the extent that it alleges breaches of contract as to the Out-of-Trust Loans, is GRANTED.

b. Count Two, CapLOC's claim that McCord breached the McCord Guaranty, is DENIED.

c. Count Three, CapLOC's claim that FMC breached the Service Agreement as to the Out-of-Trust Loans, is GRANTED.

3. Eli Global's motion for summary judgment against FMC is GRANTED as to FMC's claim for lost profits damages, and DENIED as to FMC's claim for reliance damages.

The following issues remain for trial:

1. Damages on CapLOC's breach of contract claim against FMC and McCord, for:

    a.   Failure to remit principal and interest payments;

    b.   Failure to turn over loan information;

    c.   Breach of representations and warranties;

    d.   Misuse of escrow and custodial accounts;

    e.   Misdirecting payoffs;

    f.   Failure to give notice of default; and

    g.   Failure to sell loans timely.

2. Damages on CapLOC's unjust enrichment claim against FMC and McCord.

3. Liability and damages on CapLOC's fraud and fraudulent concealment claims against FMC and McCord.

4. Liability and reliance damages on FMC's breach of contract claim against Eli Global.

    Trial in this case will commence on **June 8, 2020**, at **9:00 a.m.**  The Clerk of Court is directed to terminate the motions at ECF Nos. 227, 230, and 233.

    SO ORDERED.

Dated: March 3, 2020
      New York, New York

 

_____
ANALISA TORRES
United States District Judge